UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREGORY CARLTON SIMPSON,

Petitioner,

v.                                                    Case No.  8:04-cv-1808-T-17EAJ

FLORIDA PAROLE COMMISSION,
JAMES V. CROSBY, JR.,

Respondents.
_____

## **ORDER**

This cause is before the Court on Petitioner Gregory Carlton Simpson's 28 U.S.C.

§ 2254 petition for writ of habeas corpus. Simpson is an inmate in the custody of the Florida

Department of Corrections. The Florida Department of Corrections is the State of Florida's

correctional agency charged with the protective care, custody, and control of inmates. See

Chapter 944 of the Florida Statutes. The Florida Parole Commission is charged with the

administration of parole and other supervision programs, including Conditional Release

supervision. See Chapter 947 of the Florida Statutes.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner's criminal history spans over twenty (20) years and includes numerous law

violations both as a juvenile and as an adult. (Exh. A).

1. On or about January 3, 1985, the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, Case No. 84-01526, sentenced Petitioner a term of one (1) year and one (1) day in state prison for the offense of Burglary. (Exh. A).

2. The Court also sentenced Petitioner to serve one (1) year and one (1) day in state prison for the offense of Shooting into a Dwelling in Case No. 84-9893. (Exh. A).

3. On or about August 28, 1987, the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, Case No. 86-12786, sentenced Petitioner to a term of two (2) years in state prison for the offense of Resisting an Officer With Violence. (Exh. A).

4. On August 31, 1988, the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, Case No. 88-9457, sentenced Petitioner to a term of three (3) years in state prison for the offense of Burglary. (Exh. A).

5. On April 17, 1992, the Circuit Court of the Tenth Judicial Circuit, Polk County, Florida, Case No. 91-5479, sentenced Petitioner to a term of four (4) years in state prison for the offense of Sale of Cocaine. (Exh. B).

6. The Court also sentenced Petitioner to a term of four (4) years in state prison for the offense of Sale of Cocaine in Case No. 92-0133, (Exh. C).

7. On February 21, 1993, the Department of Corrections released Petitioner on Control Release supervision in accordance with § 947.146 of the Florida Statutes for a term of supervision that was to last until September 9, 1999. (Exh. D).

8. On July 8, 1994, the Circuit Court of the Tenth Judicial Circuit, Polk County, Florida Case No. 93-5485, sentenced Petitioner to a term of fifteen (15) years in state prison for the offense of Robbery. (Exh. E).

9. On August 23, 1994, the Parole Commission revoked Petitioner's Control Release based on several violations, including a battery. (Exh. F).

10. On June 16, 2000, the Department of Corrections released Petitioner on Conditional Release supervision in accordance with § 947.1405 of the Florida Statutes subject to the terms and condition of supervision that was set to last until December 10, 2008. (Exh. G).

11. On June 26, 2002, the Parole Commission issued a Warrant for Retaking Conditional Releasee. The Parole Commission charged Petitioner with violating his Conditional Release supervision. (Exh. H).

12. The Parole Commission notified Petitioner of the violations and advised him of his rights in the violation proceedings. (Exh. I).

13. On October 9, 2002, the Parole Commission afforded Petitioner a Conditional Release violation hearing. At the conclusion of all the evidence, which included Petitioner's admission of guilt to one of the violations, the Hearing Examiner found Petitioner guilty of violating his Conditional Release supervision. (Exh. J).

14. On December 4, 2002, the Florida Parole Commission revoked Petitioner's Conditional Release supervision. (Exh. K).

15. On or about March 28, 2003, Petitioner filed an "Emergency Petition for Writ of Habeas Corpus or, in the alternative a Petition for Writ of Mandamus." (Exh. L). In his Petition, Petitioner claimed that the Parole Commission had improperly revoked his Conditional Release supervision based on "purely hearsay, with no exceptions…." (Exh. L, p. 3).

16. The Court directed the Parole Commission to respond to Petitioner's allegations. (Exh. M).

17. On or about July 11, 2003, the Parole Commission filed its response. (Exh. N).

18. On August 5, 2003, the Court denied Petitioner's Petition for Writ of Habeas Corpus. (Exh. O). The Court stated:

> This case is before the Court on the Petitioner's Emergency Petition for Writ Habeas Corpus or in the Alternative Petition for Writ of Mandamus and the Court having reviewed and considered the Petition and the Response filed by the Florida Parole Commission and all other pleadings filed in this case, finds and decides that the Petitioner is not entitled to the requested relief.

> The Petitioner challenges the revocation of his Conditional Release supervision and asserts that the revocation of his Conditional Release was improperly based on hearsay evidence alone.

> These proceedings are in the nature of an appellate review in that the Petitioner is contesting an order of the Florida Parole Commission revoking his parole. See Sheley v. Florida Parole Commission, 703 So. 2d 1202 (Fla. 1st DCA 1997), approved, 720 So. 2d 216 (Fla. 1998): Newell v. Moore, 826 So.2d 1033 (Fla. 1st DCA 2002) The Commission's decision is clothed with a presumption of correctness, Wasko v. State, 505 So.2d 1314 (Fla. 1987) and the standard of review in a probation or parole revocation is whether the revoking authority has abused its discretion. State ex rel. Florida Parole and Probation Commission, v. Helton, 313 So.2d 413 (Fla. 1st DCA 1975).

> The Court finds that there has been no abuse of discretion in the Commission's actions in revoking the Petitioner's Conditional Release supervision.

> The Petitioner was charged with battering his wife and his son during a domestic altercation. At the Petitioner's Conditional Release violation hearing, the Temple Terrace Police Officer testified as to the statements made to him by the

-4-

victim (Petitioner's wife) that the Petitioner, who had been drinking had pushed her into a window causing it to break and also punched her in the mouth as well as scratching and biting her son who attempted to intervene in the altercation. According to the Hearing Summary of the violation hearing, the officer provided the written statements of both victims reflecting that the Petitioner had battered them and his photographs of the injuries inflicted on the victims and the broken window. The police officer also testified that he met with the Petitioner at the hospital and observed him to be inebriated and also testified as to the Petitioner's statement that he had a fight at home.

The Court finds the observations of the police officer constitute direct evidence and the evidence in this case, both direct and hearsay and the reasonable inferences from this evidence are sufficient to establish by a preponderance of the evidence that the Petitioner committed these violations. Morris v. State, 727 So.2d 975 (Fla. 5th DCA 1999); Young v. State, 742 So.2d 418 (Fla. 5th DCA 1999).

The Court also finds that the Petitioner admits to the violations as reflected in the Hearing Summary in which the Petitioner admitted that he was guilty of the battery on his son. Furthermore, the Court finds according to the Hearing Summary, the Petitioner admitted that he hit his wife during the argument. An admission to a supervision violation is sufficient grounds for a finding of guilt and subsequent revocation of early release. Russell v. McGlothin, 427 So. 2d 280 (Fla. 2nd DCA 1983); Earle v. State, 519 So.2d 757 (Fla. 1st DCA 1988).

The Petitioner's claim of self defense was apparently not accepted by the finder of fact who is responsible for the determination of self defense issues Stewart v. State, 672 So.2d 865 (Fla. 2nd DCA 1996) and whose findings are presumed correct. J.Y. v. State, 332 So.2d 643 (Fla. 3rd DCA 1976).

The Court finds that it was within the prerogative of the finder of fact to disbelieve the victim's testimony, D.M.L. v. State, 773 So.2d 1216 (Fla. 3rd DCA 2000), and within the fact finder's prerogative to disbelieve the testimony of the Petitioner as to his claim of self defense. It is therefore:

ORDERED and ADJUDGED that the instant Petition is DENIED.

Petitioner filed a motion for belated appeal. On June 3, 2004, the First District Court of Appeal denied Petitioner's motion. (Exh. P).

On or about January 1, 2004, Petitioner filed the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

STANDARDS OF REVIEW

Because Simpson filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002). The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]). AEDPA is relevant to a review of this Petition.

**A.**

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d); <u>Price v. Vincent</u>, 123 S.Ct. 1848, 1852-53 (2003); <u>Clark v. Crosby</u>, 335 F.3d 1303, 1308 (11th Cir. 2003); <u>Harrell v. Butterworth</u>, 251 F.3d 926, 930 (11th Cir. 2001).  "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision.  <u>Lockyer v. Andrade</u>, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is contrary to clearly established governing federal law.  <u>Mitchell v. Esparza</u>, 124 S.Ct. 7, 10 (2003); <u>Clark v. Crosby</u>, 335 F.3d at 1308-10; <u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  <u>Mitchell v. Esparza</u>, 124 S.Ct. at 10 (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).  <u>See</u> <u>also</u> <u>Price v. Vincent</u>, 123 S.Ct. at 1853; <u>Lockyer v. Andrade</u>, 538 U.S. at 75-77.  A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell v. Esparza</u>, 124 S.Ct. at 10; <u>Parker v. Secy of Dept. of Corrections</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply.  Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable.  Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4  (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.  The statutory presumption of correctness

- 8 -

applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

**B.**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ."  28 U.S.C. 2254(b)(1)(A); Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838,  842 (1999). See also, Henderson v. Campbell, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Snowden v. Singletary, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting Duncan v. Henry,  513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing O'Sullivan, 526 U.S. at 845).  This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance.  O'Sullivan, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Smith v. Jones, 256 F.3d at 1138.  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson v. Campbell, 353 F.3d at 891(quoting Judd v. Haley, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances.  First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d at 892; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Simpson must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions."   Hollis v.

Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152,

170 (1982). Simpson must show that there is at least a reasonable probability that the

result of the proceeding would have been different.  Henderson v. Campbell, 353 F.3d at

892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted

claim, without a showing of cause or prejudice, if such review is necessary to correct a

fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000);

Henderson v. Campbell, 353 F.3d at 892.  This exception is only available "in an

extraordinary case, where a constitutional violation has resulted in the conviction of

someone who is actually innocent."   Henderson v. Campbell, 353 F.3d at 892. The

fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence

rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001) (citing

Calderon v. Thompson, 523 U.S. 538, 559 (1998); Murray v. Carrier, 477 U.S. 478,  495-96

(1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary

case, where a constitutional violation has resulted in the conviction of someone who is

actually innocent").  To meet this standard, a petitioner must "show that it is more likely

than not that no reasonable juror would have convicted him" of the underlying offense.

Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual

innocence must be based on [new] reliable evidence not presented at trial." Calderon, 523

U.S. at 559 (quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of such

evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The Schlup Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Schlup 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

No Presumption that State Court Ignored Its Procedural Rules

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. See Coleman, 501 U.S. 722, 735-36 (1991); Kight v. Singletary, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

**C.**

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. Pulley v. Harris, 465 U.S. 37, 41 (1984); McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue

-12-

were raised only as a state law claim in state court. <u>Anderson v. Harless</u>, 459 U.S. 4, 6-8 (1982).

Harmless Error Standard Applicable

In the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in <u>Chapman v. California</u>, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, 507 U.S. at 637. Although no constitutional error has occurred in Simpson's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

DISCUSSION

Petitioner seeks  an order from this Court directing the Florida Parole Commission to vacate its revocation order and release him from his current incarceration.  A review of the record demonstrates that, for the following reasons, Petitioner's petition must be denied.  Petitioner raises the following grounds for relief:

**Ground One: Petitioner claims that the Parole Commission improperly revoked his Conditional Release supervision based solely on hearsay evidence. Petitioner's Petition, p. 5.**

**Ground Two: Petitioner also claims for the first time in this action that his admission to one of the violations was involuntary. Petitioner's Petition, p. 6.**

**Ground Three: Petitioner also claims for the first time in this action that the Parole Commission failed to disclose exculpatory evidence. Petitioner's Petition, p. 8.**

**Ground Four: Petitioner also contends for the first time in this action that the Parole Commission's denial of appointed counsel constituted a violation of his right against "self-incrimination." Petitioner's Petition, p. 9. (Exh. L).**

Petitioner is not entitled to relief as to any of these grounds.

First, Petitioner failed to exhaust state court remedies as to grounds two, three, and four. Petitioner has not shown cause and prejudice to overcome the procedural default and has not shown that manifest injustice will ensue if this Court does not reach the merits of grounds two, three, and four. Furthermore, as is the case with ground one, grounds two, three, and four raise only state law issues, not federal or constitutional questions.

Florida's appellate review process provides two levels of judicial review to state inmates challenging the actions of the Parole Commission. First, a Florida state inmate may obtain full review of the Parole Commission's final action by filing a petition for writ of habeas corpus or mandamus in the Florida circuit courts. See Fla. R. App. P. 9.030(c); Mabrey v. Fla. Parole Commission, 858 So. 2d 1176, 1181 (Fla. 2d DCA 2003) (holding that "review of a Parole Commission order remains available by mandamus or habeas corpus."); Johnson v. Fla. Parole Comm'n, 841 So. 2d 615, 617 (Fla. 1st DCA 2003) (holding that the proper method to challenge parole revocation is by a writ of habeas

corpus.); <u>Myers v. Florida Parole Comm'n</u>, 705 So. 2d 1000 (Fla. 4th DCA 1998) (noting that "[m]andamus is the proper remedy for challenging the Commission's refusal to set an EPRD."); <u>Lowe v. Florida Parole & Probation Com.</u>, 416 So. 2d 470, 471 (Fla. 2d DCA 1982) (holding that "the correct procedure for obtaining review of determinations by the Florida Parole & Probation Commission remains the filing of a petition for writ of mandamus or habeas corpus in the circuit court where incarcerated.").

If the circuit court denies the petition, the state prisoner may then file a petition for writ of certiorari in the Florida appellate courts pursuant to Florida Rule of Appellate Procedure 9.030. <u>Sheley v. Florida Parole Commission</u>, 720 So. 2d 216 (Fla. 1998); <u>see also</u> <u>Mabrey</u>, 858 So. 2d at 1181; <u>Stallworth v. Moore</u>, 827 So. 2d 974, 975 (Fla. 2002); see e.g., <u>Bergelson v. Singletary</u>, 721 So. 2d 1194 (Fla. 1st DCA 1998) (holding that prisoner, alleging that DOC retroactively cancelled his provisional credits in violation of Ex Post Facto Clause, first exhausted administrative remedies, then sought relief in circuit court through petition for habeas or mandamus relief, and then, after petition was denied, requested review in state's appellate court -- which was treated as petition for writ of certiorari court and granted). To invoke the district court's certiorari jurisdiction, the inmate must file the petition within thirty (30) days of rendition of the order to be reviewed. Fla. R. App. P. 9.100(c)(1).

Although certiorari proceedings are technically considered original extraordinary writ proceedings, they have taken on the character of appellate review proceedings in the district courts of appeal. Fla. R. App. P. 9.030(b)(2); <u>see also Stallworth</u>, 827 So. 2d at 977 n. 3. When an inmate files a petition in district court seeking certiorari review of a circuit

court's order denying his claims against the Parole Commission, he invokes the certiorari jurisdiction of the appellate court.

Petitioner Simpson never raised grounds two, three and four in his petition for writ of habeas against the Parole Commission. (Exh. L). Consequently, he also never filed a petition for writ certiorari in the district court of appeal seeking review of any circuit court's order involving these claims. Thus, Petitioner failed to exhaust his available state remedies and comply with the procedural requirements of 28 U.S.C. § 2254(b) and (c).

Ground One Raises Only State Law Issues

Petitioner's challenge to his revocation of Conditional Release supervision involves matters of state law, not cognizable on federal habeas corpus review. See §§ 947.1405; 947.141, Fla. Stat. (2003).

The purpose of a federal habeas proceeding is to review the lawfulness of a prisoner's custody to determine whether the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C.A. § 2254(a); Coleman v. Thompson, 501 U.S. 722, 730 (1991). The Supreme Court has held that federal habeas relief does not lie for alleged errors of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding that "... it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

The Eleventh Circuit Court of Appeals has also held that questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes, and that a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, because no question of a constitutional nature is involved. Jones v. Goodwin,

-16-

982 F.2d 464, 471 (11th Cir. 1993); see also <u>Krasnow v. Navarro</u>, 909 F.2d 451, 452 (11th Cir. 1990); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053 (11th Cir. 1983); <u>Llamas-Almaguer v. Wainwright</u>, 666 F.2d 191 (11th Cir. 1982) (holding that questions of state law cannot be raised on federal habeas corpus); Rule 1, Rules Governing § 2254 Cases in the United States District Courts.

The Eleventh Circuit has held that only in cases of federal constitutional error will a federal writ of habeas corpus be available. <u>See Jones</u>, 982 F.2d at 471; see also <u>Estelle</u>, 502 U.S. at 67-68; <u>Krasnow</u>, 909 F.2d at 452; <u>Garcia v. Perringer</u>, 878 F.2d 360, 361-62 (11th Cir. 1989); <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988). "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." <u>McCullough v. Singletary</u>, 967 F.2d 530, 535 (11th Cir. 1992) (citation omitted) (holding that no federal constitutional issues involved in claim that state law was violated by improperly using prior juvenile convictions during sentencing -- hence no basis for habeas relief), cert. denied, 507 U.S. 975, reh'g denied, 507 U.S. 1046 (1993); see also <u>White v. Singletary</u>, 70 F.3d 1198, 1201 (11th Cir.), cert. denied, 516 U.S. 1018 (1995) (holding that claims predicated on state trial court's denial of petitioner's request for grand jury transcripts, in camera review of those transcripts, and names of grand jurors, and claim based on court's refusal to review exculpatory evidence, truly raise issues of state law and, thus, do not present question for federal court on habeas review); <u>Williams v. Turpin</u>, 87 F.3d 1204, 1206 n. 1 (11th Cir. 1996) (court refused to review claims of improper jury instructions and improper sentencing

verdict format under Georgia law, because a federal habeas court cannot review perceived errors of state law).

The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir.), cert. denied, 504 U.S. 944 (1992).

For example, in the area of state sentencing guidelines, the Eleventh Circuit held that federal courts may not review a state's alleged failure to adhere to its own sentencing procedures. Branan, 861 F.2d at 1508. In Branan, although the prisoner alleged violations of federal law, the Court determined that the petition was based exclusively on state law issues, which were merely 'couched in terms of equal protection and due process,' and therefore, the petition must be dismissed. Id. (Citation omitted).

Petitioner Simpson challenges the revocation of Conditional Release supervision on the bases that the Hearing Examiner's guilty findings were based exclusively on hearsay evidence. As with petitions challenging sentencing under the state's statutory guidelines, the instant petition is based on state law issues. Florida's statutes and administrative rules prescribe the requirements and procedures for placing state inmates on conditional release supervision, the procedures for revoking supervision if an inmate violates the terms and conditions of supervision, and the consequences of revocation of conditional release supervision. See §§ 947.1405, 947.141 and 944.28(1), Fla. Stat. (2003).

A review of the proceedings below shows no error. (Exh. J). Petitioner's claim constitutes a challenge to the authority of the Parole Commission as exercised in revoking his Conditional Release supervision after a hearing, where the Hearing Examiner made

evidentiary and factual determinations. See §§ 947.1405 and 947.141, Fla. Stat. (2003). The petition presents issues of state law and procedure, which are not cognizable on federal habeas corpus review.

Petitioner alleged that the Parole Commission's guilty findings were based solely on hearsay. The Florida State Circuit Court reviewed Petitioner's Petition for Writ of Habeas Corpus, and the documents attached thereto, including the Hearing Summary Report and found no error.[1] (Exh. L & O).

Petitioner's final revocation hearing, and all the notices, rights and processes the Parole Commission affords a releasee are entirely guided by state law. See §§ 947.1405, 947.141, Fla. Stat. (2003); see also Fla. Admin. Code R. 23-23.010 - 23-23.011. These notices, rights and processes are also in compliance with established federal law. See Morrissey v. Brewer, 408 U.S. 471, 483 (1972). In Morrissey the United States Supreme Court explained that:

> Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to prison without the burden of a new adversary

---

[1] In Glumb v. Honsted, 891 F.2d 872, 873-874 (11th Cir. 1990), the Eleventh Circuit Court of Appeals stated,

> [t]he Supreme Court requires that factfinders provide a written statement of the evidence that they relied upon as well as the reasons for revoking parole. Morrissey, 408 U.S. 471, 481. The hearing summary prepared by the examiners satisfies this requirement and provides a sufficient record for a review of the proceedings. Hrynko, 402 F.Supp. at 1087. We know of no federal decision requiring a verbatim transcript of parole revocation proceedings. Id. at 1086-87.

criminal trial if in fact he has failed to abide by the conditions of his parole. Morrissey, 408 U.S. at 483. (Emphasis added).

The Morrissey Court also made clear that all that is required is:

> an informal hearing structure to assure that the finding of a parole violation will be based on verified facts and the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior. Morrissey, 408 U.S. at 484.

The Morrissey Court further noted that "revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." Morrissey, 408 U.S. at 480.

Similarly, in Gagnon v. Scarpelli, 411 U.S. 778, (1973), the Supreme Court again emphasized the distinction between revocation hearings and criminal trials, stating:

> there are critical differences between criminal trials and probation or parole hearings, and both society and the probationer or parolee have stakes in preserving these differences. In a criminal trial, a prosecutor represents the State; formal rules of evidence are in force; a Petitioner enjoys a number of procedural rights, which may be lost if not timely raised; and in a jury trial, a Petitioner must make a presentation understandable to untrained jurors. In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the state is represented, not by a prosecutor, but by a probation officer with an orientation described above; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practices of probation and parole...

Gagnon, 411 U.S. at 788-789; (Emphasis added).

In Morrissey, the Court outlined the minimum requirements of due process, which include:

> (a) written notice of the claimed violations of parole;

-20-

(b) disclosure to the parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses(unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a "neutral and detached" hearing body such as traditional parole board members of which need not be judicial officers or lawyers; and

(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey, 408 U.S. at 489.

It is clear from the record that the Florida revocation process, and Petitioner's final revocation proceeding, complied with the general constitutional requirements set out by the United States Supreme Court in Morrissey and Gagnon. (Exh. J). Moreover, contrary to Petitioner's allegations, the Hearing Examiner based the guilty findings on all the evidence adduced at the hearing such as:

(a) the testimony of the investigating police officer, which was based on personal observations of the victims' injuries on the day of the incident as well as Petitioner's statements, injuries and inebriated state;

(b) photographs depicting the victims' injuries;

(c) a police investigative report;

(d) the victims' sworn statements, which constituted prior inconsistent statements; and

(e) Petitioner's own admission of guilt to one of the violations.

(Exh. J).

An admission to a supervision violation is sufficient grounds for a finding of guilt and subsequent revocation of early release. Earle v. State, 519 So. 2d 757, 758 (Fla. 1st DCA 1988) (holding that probationer's admissions supported revocation orders); see also Waring v. State, 504 So. 2d 786, 787 (Fla. 2d DCA 1987) (holding that a releasee's confession of a crime, in itself, is enough to support an order of revocation of probation); Bexley v. State, 490 So. 2d 226, 228 (Fla. 2d DCA 1986) (holding that revocation of probation based upon

an admission to certain probation violations was not error); <u>Russell v. McGlothin</u>, 427 So. 2d 280, 282 (Fla. 2d DCA 1983) (holding that "[a] probationer's admissions against interest may, as a matter of law, be sufficient to revoke his probation.').

Moreover, the Hearing Officer properly choose to believe the police officer's statements over the witnesses' and Petitioner's self-serving statements. <u>D.M.L. v. State</u>, 773 So. 2d 1216, 1217 (Fla. 3d DCA 2000) (holding that it is well within the prerogative of the fact finder to determine the credibility of a witness); <u>see also McKinney v. State</u>, 624 So. 2d 373, 374 (Fla. 1st DCA 1993) (holding that "[i]t was the trial court's prerogative to accept the community control officer's testimony over that of appellant."); <u>McPherson v. State</u>, 530 So. 2d 1095 (Fla. 1st DCA 1988); <u>Mobley v. State</u>, 348 So. 2d 373 (Fla. 3d DCA 1977).

As the <u>Morrissey</u> Court explained, a revocation hearing is not a traditional adversary criminal trial but is only a final evaluation of any contested relevant facts and a consideration of whether the facts warrant revocation. The <u>Morrissey</u> Court has further found that the use of hearsay as substantive evidence at a revocation hearing is not per se unconstitutional. <u>See Morrissey</u>, 408 U.S. at 499 ("We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."); <u>see also Gagnon</u>, 411 U.S. at 789; <u>Crawford v. Jackson</u>, 355 U.S. App. D.C. 282 (D.C. Cir. 2003) (holding that "given the indicia of reliability of the police investigative report, the Board's reliance on the hearsay evidence did not render its revocation decision so

lacking in support that it was fundamentally unfair."). The factfinder is not required to follow strict rules of evidence nor is he/she precluded from considering material that would not be admissible in a trial. Singletary v. State, 290 So. 2d 116 (Fla. 4th DCA 1974).

Moreover, a reviewing court cannot reevaluate the weight and credibility of evidence presented before an administrative agency. The District Courts of Florida agree that a Court that reevaluates the credibility of evidence or reweighs conflicting evidence before the lower tribunal departs from the essential requirements of law. Tedder v. Florida Parole Comm'n., 842 So. 2d 1022 (Fla. 1st DCA 2003); see also City of Deland v. Benline Process Color Co., Inc., 493 So. 2d 26 (Fla. 5th DCA 1986); Pompano Beach Police and Firemen's Pension Fund v. Franza, 405 So. 2d 446 (Fla. 4th DCA 1981); Board of County Commissioners of Pinellas County v. City of Clearwater, 440 So. 2d 497 (Fla. 2d DCA 1983). Fact-finding is solely within the province of lower tribunals, either administrative or judicial. Siegal v. Career Service Commission, 413 So. 2d 796 (Fla. 1st DCA 1982).

Petitioner has neither shown, nor even argued, that the state court's decision with respect to ground one is contrary to or an unreasonable application of federal law. Petitioner is merely attempting to avoid the consequences of violating the terms and conditions of his Conditional Release supervision.

## CONCLUSION

Grounds two, three, and four are not properly before this Court because Petitioner failed to exhaust state remedies and comply with the procedural requirements of 28 U.S.C. § 2254. Ground one involves application of state law and raises no federal question cognizable on federal habeas corpus review. All grounds involve issues of state law.

Accordingly, the Court orders:

That Petitioner's petition for writ of habeas corpus is denied, with prejudice.   The

Clerk is directed to enter judgment against Petitioner and to close this case.

ORDERED at Tampa, Florida, on April 10, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record

Gregory Carlton Simpson, Pro se